UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CINDY MARIE WIERCIOCH,

    Plaintiff,

v.    Case No. 2:13-cv-292
    HON. TIMOTHY P. GREELEY

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

## OPINION

    Plaintiff Cindy Marie Wiercioch was born on August 2, 1969, and has worked different jobs over the years. Transcript of Administrative Hearing at 47, 49-50 (hereinafter Tr. at __). Plaintiff applied for Social Security Disability Insurance (SSDI) and Supplemental Security Insurance (SSI) on March 7, 2011. Tr. at 151-157, 158-166. Plaintiff was denied SSDI and SSI on May 20, 2011, after a finding by the Social Security Administration that she was not disabled. Tr. at 97-101, 102-105. Plaintiff requested a hearing before an Administrative Law Judge (ALJ) on July 20, 2011. Tr. at 107-108. ALJ Robert Bartelt, Jr., presided over a hearing held on March 13, 2012, in which Plaintiff was represented by attorney Bill Nordeen. Tr. at 29. Testifying at the hearing were Plaintiff, vocational expert David Ostwald, and medical expert Allen Hauer, Ph.D. Tr. at 31-71. On July 16, 2012, the ALJ issued a decision finding Plaintiff not under a disability as defined by the Social Security Act. Tr. at 10-24. Plaintiff requested a review of the ALJ's decision on September 17, 2012. Tr. at 7. On July 27, 2013, the Appeals Council denied Plaintiff's request

for review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner. Tr. at 1-3. Plaintiff filed this action in response.[1]

A review of the medical records shows Plaintiff suffers from asthma. Although Plaintiff claims severe asthma, she reports no attacks requiring hospitalization or emergency room care. Tr. at 258. Instead, the asthma appears well under control with medication. Tr. at 258, 294, 306 (continues to remain stable). Medical evidence indicates Plaintiff's asthma improved between April 2011 to June 2011. Tr. at 388, 396, 401.

Plaintiff also complains of fibromyalgia, testifying "I have a hard time doing a lot because I'm in a lot of pain in my back and my neck." Tr. at 53. Medical evidence of record shows Plaintiff stated to her primary care physician, Dr. Mary Tobin-Anderson, that she suffers from fibromyalgia, which her doctor consistently notes under past medical history. Tr. at 294-307, 315-321, 326, 332-334, 336-345, 347-352, 355-358, 386-402, 404-409. The medical evidence of record lacks evidence of a diagnosis of the condition, but does include prescriptions for pain medication. *Id.* On October 10, 2010, medical records indicate that Plaintiff is "tender to palpate everywhere on back and extremities" and that fibromyalgia is "probable." Tr. at 333. However, no other findings or testing support the diagnosis.

Most prominent in the medical records is that Plaintiff suffers from depression. Medical records from Dr. Tobin-Anderson lists bipolar as an ongoing ailment. Tr. at 294-307, 315-321, 326, 332-334, 336-345, 347-352, 355-358, 386-402, 404-409. Records from Pathways CMH suggest Plaintiff suffers from a major depressive disorder, recurrent and moderate. Limited licensed psychologist Barbara Halazon, who was secured by the Social Security Administration for a

---

[1] Both parties consented to proceed before a Magistrate Judge on December 10, 2013.

disability determination, diagnosed Plaintiff with bipolar disorder NOS. Tr. at 381, 370. Clinical psychologist and medical expert Allen Hauer testified that Plaintiff suffers borderline personality disorder, suggesting that the other diagnoses were based on symptoms reported by Plaintiff and not under a syndrome or condition. Tr. at 60. Plaintiff sees a counselor for her depression, and reported on January 3, 2012, that therapy is "helping me tons," and again on February 8, 2012, that things "are going very well these days. I'm happy with my life," citing a good relationship with her boyfriend and relieved stress when her parents moved. Tr. at 441, 439.

The ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). The reviewing court must uphold an ALJ's decision if substantial evidence supports the finding. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Substantial evidence is more than a mere scintilla of evidence but less than a preponderance of evidence. *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). This Court must affirm the ALJ's findings if sufficient evidence supports the decision even if evidence supports an alternative conclusion.

In determining if a disability exists, the ALJ must follow a five-step sequential analysis. 20 C.F.R. § 404.1520. If at any step the Plaintiff is found to be disabled or not disabled, the analysis stops and the Plaintiff is declared as such. *Id.* Here, at step one, the ALJ found Plaintiff engaged in substantial gainful activity from March 30, 2010, to April 2011, but that there had been a continuous twelve-month period during which Plaintiff did not engage in substantial gainful activity. Tr. at 15. At step two, the ALJ found Plaintiff suffered the severe impairments of asthma,

degenerative disc disease of the spine, and borderline personality disorder. *Id.* At step three, the ALJ found Plaintiff's impairments or combined impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 16. At step four, the ALJ found Plaintiff had the residual functional capacity to perform light work as defined by 20 C.F.R. § 404.1567(b) and 416.967(b), except:

> she is limited to work involving no public contact and minimal if any changes in work setting; she is limited to no more than occasional bending, twisting, or crouching; and she must be given the option to sit or stand and change position at least once every 60 minutes, in addition to regularly scheduled breaks.

Tr. at 17. At step five, the ALJ found there were a significant number of jobs in the national economy that Plaintiff could perform. Tr. at 21.

Plaintiff claims the ALJ erred in failing to credit her diagnosis of fibromyalgia, as well as multiple symptoms and conditions that she claims proves the presence of fibromyalgia. In evaluating fibromyalgia under the general criteria for SSDI and SSI claims, Plaintiff must provide evidence that a licensed physician reviewed her medical history and performed a physical exam. SSR 12-2P. Under the specific criteria requirements for fibromyalgia, Plaintiff must provide evidence of a history of widespread pain, at least eleven tender points on a physical exam, and evidence that other possible causes for the pain were ruled out. SSR 12-2P § II.A. Alternatively, under the specific criteria requirements, Plaintiff can instead prove a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms, signs, and co-occurring conditions, and evidence that other disorders that could cause the repeated symptoms, signs, and co-occurring conditions were ruled out. SSR 12-2P § II.B.

The ALJ found Plaintiff failed to meet this burden, finding no clinical support for the diagnosis. TR at 20-21. The ALJ thoroughly discussed Plaintiff's fibromyalgia claim in his decision. *Id.* Specifically, the ALJ found that there was a lack of evidence "indicating that [Plaintiff] has any of the tender points or trigger points that are the hallmark of fibromyalgia." Tr. at 21. The ALJ's findings are supported by the medical evidence of record. The medical evidence of record lacks any clinical findings or laboratory findings that show Plaintiff suffers from fibromyalgia. Tr. at 292-508. Instead, the EMG and MRI analysis provided by Dr. Craig T. Coccia suggest other causes for Plaintiff's pain, including mild slowing of the medial nerve at the wrist, mild lumbar stenosis at the L4-L5 that is not clinically significant, and a C4-C5 disc herniation centrally, with patent foramina. Tr. at 506-508. Dr. Coccia diagnosed Plaintiff with multifactorial pain syndrome, with lower extremity discomfort due to soft tissue pain around the trochanters, and cervical disc herniation at C4-C5. Tr. at 507. Because the evidence provided finds alternative reasons for Plaintiff's pain besides fibromyalgia, there is substantial evidence to support the ALJ's finding that Plaintiff does not suffer from fibromyalgia. Therefore, the ALJ did not err in his findings regarding Plaintiff's claim of fibromyalgia.

Plaintiff claims the ALJ erred in relying on the opinion of a non-treating, non-examining medical expert over the opinion of Plaintiff's treating physician, Dr. Tobin-Anderson. The ALJ generally gives more weight to the opinion of a treating physician over that of a non-treating physician if the opinion of the treating source is well-supported by medical evidence. 20 C.F.R. 404.1527. The more medical support provided for the opinion, including medical signs and laboratory findings, the more weight the opinion will be given. *Id.* More weight is given to the opinion of a specialist in the field of expertise than the opinion of a non-specialist. *Id.*

The ALJ went into great detail why little weight was given to the opinion of Dr. Tobin-Anderson regarding Plaintiff's fibromyalgia and bipolar disorder, stating:

> While normally, the opinions of a treating physician are given controlling weight, the Dr. Tobin-Anderson's findings regarding fibromyalgia are not well-supported by the objective medical evidence, and are inconsistent with substantial other evidence in the record, including her own records, some of which are cited above. In addition, Dr. Tobin-Anderson's opinion appears to rest at least in part on her assessment of the claimant's bipolar disorder, which is outside her area of expertise. As a result, it is not determinative.
>
> Dr. Tobin-Anderson has not provided any findings support [sic] the diagnosis of fibromyalgia. Dr. Kroll, a rheumatologist, also indicated [Plaintiff] had a normal examination (Exhibit 1F, dated October 1, 2010). Testing regarding back pain and carpal tunnel syndrome indicate only mild changes and do not support the restrictive limits. The evidence indicates that [Plaintiff] maintained full time jobs well after the alleged onset date. In addition, [Plaintiff's] own reports of her activities of daily living, which include meal preparation, cleaning, laundry, driving, shopping, bill paying, helping her parents, baking, and gardening, indicate she is more capable both physically and mentally than Dr. Tobin-Anderson has suggested

Tr. at 21.

The ALJ then explained that the opinion of medical expert Dr. Hauer was supported by substantial evidence, including Plaintiff's "reports of her activities of daily living, which include meal preparation, cleaning, laundry, driving, shopping, bill paying, helping her parents, baking, and gardening." Tr. at 22. The ALJ found further support for the opinion of Dr. Hauer in Plaintiff's friend's statement of seeing Plaintiff three or four times a week, that Plaintiff had a boyfriend, that Plaintiff cared for her parents, and that Plaintiff was able to work full time for over a year while only losing the position after calling in sick. *Id.*

When not giving the opinion of the treating physician controlling weight, the ALJ is required to provide good reasons for the weight given to the opinion of a treating source. 20 C.F.R. 404.1527. The ALJ fulfilled this obligation. The ALJ stated that Dr. Tobin-Anderson failed to provide any findings to support the diagnosis of fibromyalgia. Tr. at 21. The MRI and EMG testing analysis provided by Dr. Coccia regarding Plaintiff's back and neck pain, as well as her carpal tunnel, found only mild changes. Tr. at 506-508. The examination by Dr. Todd K. Bostwick of Plaintiff's cervical and lumbar spine was normal, with a transitional L5 with the left L5 transverse process articulating with the sacrum and only mild degenerative changes of spondylosis. Tr. at 308.

The ALJ stated that Dr. Tobin-Anderson based her opinion in part on her assessment of Plaintiff's bipolar disorder. Tr. at 21. Although the opinion of a treating physician is generally given greater weight than that of a non-treating physician, regulations state that more weight is to be given to the opinions of specialists in a field than the opinions of non-specialists. 20 C.F.R. 404.1527. Dr. Tobin-Anderson is a general practitioner that does not specialize in mental health issues; Dr. Hauer is a clinical psychologist and expert in his field. Tr. at 21-22. The ALJ discredited Dr. Tobin-Anderson's opinion because she is not a specialist in mental health in accordance with the statute. Tr. at 21. On the other hand, Dr. Hauer is a specialist in mental health. Tr. at 59. The ALJ cited substantial evidence that supports Dr. Hauer's assessment, which is stated above. Since the medical evidence supports the opinion of Dr. Hauer, and Dr. Hauer is a specialist in mental health while Dr. Tobin-Anderson is not, the ALJ did not err by giving the opinion of the non-treating source greater weight than the opinion of the treating physician.

Plaintiff claims the ALJ erred in not asking the vocational expert a hypothetical question that incorporated moderate difficulties in maintaining concentration, persistence, and pace.

The ALJ may rely on the testimony of a vocational expert in response to a hypothetical question as substantial evidence if the question accurately portrays Plaintiff's physical and mental impairments. *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Plaintiff is mistaken in claiming that the ALJ neglected to ask a hypothetical question that took Plaintiff's concentration levels into account. The last question the ALJ asked the vocational expert was:

> And if one were distracted or not doing what one was supposed to be doing, just generally being off task, what tolerance is there in these types of jobs for that, if any, being off – I mean, not including the usual breaks, I mean – of course, you're off task, but I mean when you're actually supposed to be working.

Tr. at 68. The vocational expert replied "[g]enerally, they'll tolerate approximately 10 percent, which is about six – five to six minutes in an hour." *Id.* The ALJ did ask a hypothetical question incorporating Plaintiff's difficulties in maintaining concentration, persistence, and pace and the vocational expert answered the question. *Id.* The medical expert testified that Plaintiff would have "slight deficits in the ability to sustain or concentrat[e] and complete work days without brief episodic interruptions from psychologically-based symptoms." Tr. at 63. When asked how often and how long cumulatively in a day Plaintiff would be off task because she lost concentration, the medical expert replied "[o]ff and on during the day, brief seconds at a time. Probably never, even over a whole day, never reaching a total of fifteen minutes." *Id.* Substantial evidence supports the ALJ's findings that Plaintiff could perform substantial gainful activity given her concentration level. Therefore, the ALJ did not err in his questioning of the vocational expert.

Plaintiff claims the ALJ's credibility assessment was flawed. However, a reviewing court is limited to determining if there is substantial evidence in the record to support the ALJ's findings and may not decide questions of credibility. *Siterlet v. Sec'y of Health and Human Servs.*,

823 F.2d 918, 920 (6th Cir. 1987). Substantial evidence supports the ALJ's finding that Plaintiff's statements were not credible to the extent they were inconsistent with the residual functional capacity assessment. Plaintiff testified that she could not accept a job at a golf course because "I decided I – I couldn't do it because it – there's no jobs there that I could just be by myself or not – that it wouldn't affect my emotions or my anxiety or – so I wouldn't get upset or cry." Tr. at 39-40. The medical evidence regarding Plaintiff's state of mind shows that her depression was stable and under control, especially since she no longer cared for her parents. Tr. at 441, 439. The most recent report from Pathways CMH quotes Plaintiff as saying that things "are going very well these days. I'm happy with my life." Tr. at 439. Plaintiff reported that both parents had moved and that the moves had been good for her – "I'm way less stressed and overwhelmed. I feel like I have my life back." *Id.*

Plaintiff also testified that she had a hard time working because of pain in her back and leg and that this pain was diagnosed as fibromyalgia. Tr. at 43-44. However, an MRI scan of the lumbar spine showed mild lumbar stenosis at the L4-L5 level that was not clinically significant. Tr. at 507. An MRI of the cervical spine found a C4-C5 disc herniation centrally, with patent foramina. *Id.* After reviewing the scans, Dr. Coccia diagnosed Plaintiff with multifactorial pain syndrome, with the lower extremity pain due to soft tissue pain. *Id.* Dr. Coccia stated in his evaluation that "mechanical symptoms and perhaps a component of neuropathic symptoms, I believe, are minimal." *Id.*

Plaintiff testified she suffered from carpal tunnel that would keep her from working. Tr. at 45. An EMG and nerve conduction study was performed because Plaintiff complained of

intermittent numbness in the hands. Tr. at 57. The EMG showed only mild slowing of the median nerve at the wrist, which likely correlated with her sensory symptoms. *Id.*

Overall, substantial medical evidence supports the ALJ's finding that Plaintiff's ailments may not be as debilitating as she claims. Therefore, the ALJ did not err in the credibility finding.

After a review of the record, I conclude there is substantial evidence supporting the ALJ's finding that Plaintiff is not disabled as defined by the Social Security Administration. This Court must uphold the ALJ's finding if substantial evidence supports it. Accordingly, the decision of the Commissioner is AFFIRMED and Plaintiff's request for relief is DENIED.

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   June 3, 2014